No. 85-161

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

_____

DEVON OIL & GAS COMPANY, INC.,
a Washington corporation,

        Plaintiff and Respondent,

   -vs-

MILAN R. AYERS, et al.,

        Defendant and Appellant.

_____

APPEAL FROM:  District Court of the Ninth Judicial District,
In and for the County of Toole,
The Honorable R. D. McPhillips, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        William Conklin; Dzivi, Conklin & Nybo, Great Falls,
Montana

    For Respondent:

        James C. Nelson; Werner, Nelson & Epstein, Cut Bank,
Montana

_____

Submitted on briefs: Aug. 15, 1985

Decided: October 8, 1985

Filed: OCT 8 1985

_____
Clerk

Mr. Justice Frank B. Morrison, Jr., delivered the Opinion of the Court.

Defendants Milan R. Ayers and Ayers Oil & Gas Corporation appeal the February 25, 1985, findings of fact and order of the Ninth Judicial District Court granting motion for summary judgment against both defendants in favor of plaintiff Devon Oil & Gas Company, Inc. We affirm the summary judgment.

On July 10, 1981, Milan Ayers (Ayers), Terry Dunne, Rockne Timm, and Kenneth Halverson met in Spokane, Washington, to discuss the possibility of entering into an agreement to participate in working gas leases held by Ayers. Dunne and Timm were partners in R & T Company of Spokane, and also were on the board of directors of Devon Oil & Gas Company, Inc. (Devon). The trial court found that the meeting produced two agreements.

The first agreement was entitled Devon Gas Field Option Agreement, and identified R & T Company as desiring to purchase an option from Ayers for the development and production of gas reserves. The agreement provided that R & T Company would make an option payment, which Ayers would use to hire an engineer to study the area's potential. The balance of the option payment was to be used to perfect title on Ayers' existing leases and to purchase additional leases. Ayers Oil & Gas, Inc. was identified as operator of the project, and agreed to hold R & T harmless from all lawsuits or liabilities arising out of the execution of the agreement. The document was signed by Dunne, Timm, and Ayers. Ayers signed both as an individual and as president of Ayers Oil & Gas, Inc.

A handwritten addendum at the bottom of the last page stated that the agreement was subject to the approval of

2

Devon Oil & Gas Co. to participate. Further, that upon approval of Devon, a replacement document fully executed within 15 days would prevail. This addendum was initialed by all parties.

The second agreement was identical to the first, with Devon being substituted for R & T Company as provided for in the addendum to the first agreement. This agreement was not fully executed until sometime between July 10, 1981, and July 20, 1981. It was signed by Dunne, C.W. McWhorter (president of Devon), Ayers, as an individual and as president of Ayers Oil & Gas, Inc., and his wife, Yvonne, as secretary of Ayers Oil & Gas, Inc.

On July 21, 1981, an advance of $50,000.00 was paid to Ayers out of Devon's account, to enable Ayers to proceed with evaluation of the gas field.

On August 14, 1981, Devon's board of directors unanimously voted to defer consideration of involvement with Mr. Ayers, following a phone call raising questions about Ayers' credibility.

On August 16, 1981, Ayers sent Devon President McWhorter a letter informing him, ". . . the escrow is a recallable one totally subject to the purchasers final approval," and that Ayers considered the parties' discussions to be in a holding pattern.

On November 24, 1981, Devon entered into an Escrow Agreement and Release with Ayers and Ayers Oil & Gas, Inc. The agreement provided that Ayers and Ayers Oil & Gas, Inc. would jointly be referred to as "Ayers". Attached to the document was the first Devon Gas Field Option Agreement. The Escrow Agreement and Release provided: 1) the terms, conditions, and obligations of the option agreement had been fulfilled by both parties; 2) the option agreement was

3

rescinded, and the parties released all claims against each other; 3) "Ayers" agreed to pay to Devon, on or before January 30, 1982, $50,000.00 plus interest computed from August 16, 1981; 4) as security for the debt, "Ayers" agreed to place in escrow 37½% of the working interest in leases described in an attached exhibit; and 5) in consideration of the $50,000.00 payment, Devon conveyed to "Ayers" any interest in the leases it had acquired under the option agreement. The Escrow Agreement and Release was signed by Devon President McWhorter, and Ayers, both as individual and as president of Ayers Oil & Gas, Inc.

Ayers was granted an extension until March 1, 1982, to make the payment. Ayers requested additional extensions, but there is no evidence indicating they were granted. On July 3, 1982, Timm wrote Ayers demanding immediate payment or the matter would be turned over to an attorney. On July 14, 1982, an attorney for Devon sent a letter to Ayers giving him until July 30, 1982, to pay the $50,000.00 plus interest. On July 29, 1982, Ayers signed a sight draft for $56,000.00 payable to the trustee; upon honor of the draft, the trustee was to assign Devon's interest in the leases held in escrow back to Ayers Oil & Gas, Inc. The sight draft went unpaid due to insufficient funds.

Due to Ayers' failure to satisfy the debt, Devon requested Ayers to post more security. Ayers assigned additional interest to Devon in his oil and gas leases on November 30, 1982. The following March, Devon sent out inquiries concerning the current standing of Ayers' leases. The responses indicated Ayers' leases had lapsed for nonpayment. Devon filed suit.

Based upon the exhibits, affidavits, and briefs before the District Court, motion for summary judgment was granted

4

to plaintiff Devon against Ayers personally and Ayers Oil and Gas Corporation in the amount of $71,320.55 on March 11, 1985. On appeal, appellants raise the following issues: 1) Whether the District Court erred in ruling that no material fact was in dispute concerning the liability of the corporate defendant Ayers Oil & Gas, Inc., to plaintiff for the sum of $50,000.00 plus interest, based upon so-called admissions of liability by defendant Milan R. Ayers on behalf of defendant Ayers Oil & Gas, Inc., and in granting summary judgment in favor of plaintiff against Ayers Oil & Gas, Inc., on that basis. 2) Whether the District Court erred in its implied ruling that the Escrow Agreement and Release document dated November 24, 1981, is supported by consideration as to corporate defendant Ayers Oil & Gas, Inc., and in granting summary judgment against defendant Ayers Oil & Gas, Inc. 3) Whether the District Court erred in granting summary judgment against both defendants founded upon the Escrow Agreement and Release, which document is ambiguous and requires explanation with parole evidence.

Appellants contend numerous findings of fact were made by the trial court on a disputed record. While some of the findings may not be precisely correct, we believe there are sufficient undisputed facts in the record to uphold the summary judgment against the corporate defendant.

Ayers contends the corporation is not a contractual party and is not liable. Ayers attempts to raise a corporate versus individual distinction issue after dealing with Devon for over a year where he rarely distinguished whether he was acting individually or as corporate head.

The two versions of the Devon Gas Field Option Agreement were entered into by "Milan R. Ayers, P.O. Box 737, Shelby, Montana, 59474." The corporation was not shown as a

5

contracting party at the top of the agreement. However, Ayers' address was used by the corporate defendant, Ayers Oil & Gas, Inc. Both of the agreements were signed by Ayers, as individual, and as president of Ayers Oil & Gas, Inc. The agreements identified Ayers Oil & Gas, Inc. as operator of the project, and further provided Ayers Oil & Gas, Inc. would be held responsible for any lawsuits arising out of the execution of the agreements. That Ayers Oil & Gas, Inc. is named in the agreements and Ayers signed as president is sufficient to support the trial court's finding it was a party to both versions of the Devon Gas Field Option Agreement. Section 28-10-603, MCA.

The Escrow Agreement and Release clearly identifies Ayers Oil & Gas, Inc. as a party thereto, and was signed by Ayers individually, and as corporate head. The document is a recognition that both Ayers and Ayers Oil & Gas, Inc. were indebted for $50,000.00 plus interest to Devon.

Subsequently, a sight draft drawn by Ayers for $56,000.00 had his signature followed by "Ayers Oil & Gas, Inc." This is effective consent to the contract by the corporation under § 28-2-501(1), MCA.

In sum, we find the trial court was correct in holding there was no evidence of a genuine issue of material fact and issuing summary judgment against both defendants.

Our holding that Ayers Oil & Gas, Inc. was a party to the Devon Gas Field Option Agreement is sufficient to find that consideration flowed to Ayers Oil & Gas, Inc. under the Escrow Agreement and Release. The release relieved Ayers Oil & Gas, Inc. of its obligation to perform and any possible claims against it arising under the option agreement. Release from contract obligations and forbearance to sue are

6

both adequate consideration. Sections 28-2-801 and -802, MCA.

Appellants assert the Escrow Agreement and Release is ambiguous due to the attachment and incorporation of the R & T Company version of the Devon Gas Field Option Agreement. They further contend that the R & T document was the only valid agreement since the Devon board of directors voted not to pursue involvement with Ayers. Neither contention is supported by the facts.

The first option agreement contained an addendum providing that it was contingent upon the approval of Devon, with a subsequently executed document to supercede. The second document was executed and signed by Devon's president, according to the terms of the addendum. The signatures of the parties made the contract binding; the vote by Devon's board of directors did not affect the validity of the contract.

The two versions of the Devon Gas Field Option Agreement were virtually identical. Each identified Ayers Oil & Gas, Inc. as a party thereto, and each was signed by Ayers as president. The attachment of one rather than the other does not make the Escrow Agreement and Release ambiguous.

The decision of the trial court is affirmed.

_____
Justice

We concur:

_____
_____
_____
_____
Justices

7